UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOHN T. BOYLE,

                            **Plaintiff,**

-against-                                           3:07-CV-443

ONC BOCES, BOARD OF COOPERATIVE
EDUCATIONAL SERVICES OTSEGO,
DELAWARE, SCHOHARIE and GREENE
COUNTIES, BOARD OF EDUCATION,
MARIE WARCHOL WILES, NANCY NOONAN,
and DIANE MATTESON,

                            **Defendants.**
_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

**I. INTRODUCTION**

      Plaintiff commenced this action pro se, asserting that he was discriminated against at his place of employment based upon a disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA"). Compl. ¶ 1. Plaintiff also arguably asserts disability discrimination claims under the New York Human Rights Law, N.Y. Exec. Law § 290 *et seq*. ("NYHRL"), and 42 U.S.C. § 1981 ("Section 1981"), § 1983

1

("Section 1983"), and § 1985(3) ("Section 1985(3)"). Id. ¶ 6.[1]  Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56.  Plaintiff has not opposed the motion.

## III. STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 592 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the Court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  While the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in his favor, Abramson v. Pataki, 278 F.3d 93, 101 (2d Cir. 2002), a party opposing a properly supported motion for summary

---

[1] Plaintiff references these statutes only in the jurisdictional section of the Complaint.

2

judgment may not rest upon "mere allegations or denials" asserted in his pleadings. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994); Fed. R. Civ. P. 56(e). Further, a party cannot rely on inadmissible hearsay in opposing a motion for summary judgment. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp., 769 F.2d 919, 924 (2d Cir. 1985)(citations omitted); see also Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999), abrogated on other grounds, Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000)( "A court may [ ] strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements."); Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999)(Hearsay evidence that would not be admissible if testified to at trial is not competent material for a Rule 56 affidavit.).

Even if the motion is unopposed, however, the Court may not grant summary judgment unless it determines that the moving party is entitled to judgment as a matter of law. Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.") (Internal quotation marks omitted).

The Local Rules of the Northern District provide a procedure for the resolution of summary judgment motions. See N.D.N.Y.L.R. 7.1(a)(3). This procedure places the onus on the parties to present the evidence that either supports or defeats the motion. A movant must first set forth the undisputed facts that, it contends, entitles it to summary

3

judgment. See N.D.N.Y.L.R. 7.1(a)(3).  Once a properly supported Local Rule 7.1(a)(3) Statement is submitted, the non-moving party must "file a response to the [movant's] Statement of Material Facts." Id.  "Any facts set forth in the [movant's] Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." Id. (emphasis in original).

The responding Statement of Material Facts is not a mere formality, and the courts apply this rule strictly even when pro se litigants are involved. See Van Loan v. Hartford Acc. and Indem. Co., 2006 WL 3782709 at *2 (2d Cir. 2006)(deeming movant's properly supported and unopposed allegations admitted by opposing party); N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648–49 (2d Cir. 2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule7.1(a)(3) statement that "offered mostly conclusory denials of movant's factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); Govan v. Campbell, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003)(holding that the leniency applied in construing a pro se litigant's pleadings does not excuse failure to follow the requirements of Local Rule 7.1(a)(3)).

In short, summary judgment will be granted when it is apparent on the facts presented that no rational trier of fact could find in favor of the nonmoving party because evidence supporting the essential elements of the non-movant's claim is lacking. Fed. R. Civ. P. 56(c);  Celotex, 477 U.S. at 332.

4

### III.   BACKGROUND

Plaintiff has not opposed Defendants' motion for summary judgment and his time do so has expired.  In accordance with the Local Rules pertaining to motions for summary judgment, Defendants' motion includes a "Notification of the Consequences of Failing to Respond to a Summary Judgment Motion" and a "Statement of Undisputed Material Facts." See dkt. # 12, # 15.  Due to Plaintiff's failure to respond to Defendant's motion, the properly supported facts set forth in Defendants' "Statement of Undisputed Material Facts" are deemed admitted.  See N.Y.N.D.L.R. 7.1(a)(3).  These properly supported facts, relevant to the instant motion, are as follows:

    1.)    The Plaintiff John Boyle is a resident of Delaware County and has been employed by the ONC BOCES as a teacher of culinary arts.  (See Plaintiff's Complaint, ¶¶ 1 and 13).

    2.)    The Plaintiff has been employed as a culinary arts instructor at the Northern Catskills Occupational Center in Grand Gorge, New York from approximately 1995 until he went out on a disability leave in June of 2003.  (See Complaint, ¶¶ 13 and 15).

    3.)    That the Plaintiff remained out on a disability leave from the period from June of 2003 through September of 2005.  (See Complaint, ¶¶ 16 and 22).

    4.)    Upon being reinstated to a full-time teaching position at the ONC BOCES, the Plaintiff complained that his reassignment was to a position which was less favorable than the original position which he held which was located closer to his personal residence.  (See ¶ 22 of Complaint).

    5.)    The Otsego Northern Catskills BOCES is an educational corporation formed under the laws of the State of New York for purposes of supplying assistance to school districts within the four counties covered by the BOCES (See New York Education Law § 1950 and Complaint, Ex. D, pp. 3-5).

    6.)    The Plaintiff filed a grievance insisting that the position to which he was assigned upon his return from his medical-related disability leave was

not as attractive to the Plaintiff as his prior assignment has been. (See Complaint, Ex. D, pp. 4-5).

7.) During the Plaintiff's leave of absence from the employer, his position was filled by Ms. Jody Albano. She performed the duties of his position and the district determined that they would retain her in that position. (See Ex. D, pp. 3-4).

8.) The Defendant restored the Plaintiff to a full-time culinary arts instructor position effective upon his doctor's instructions that he could return to work, in September of 2005. (See Complaint ¶ 22).

9.) The Plaintiff filed a complaint through the New York State Division of Human Rights alleging that he had been discriminated against. The filing was pursuant to both federal and state law. (See Complaint, Ex. A, pp. 1-3).

10.) The matter was investigated by the New York State Division of Human Rights which issued a Determination and Order After Investigation and dismissed the Plaintiff's discrimination charge filed with that agency. (See Complaint, Ex. B).

11.) In making its decision, the New York State Division of Human Rights found that "investigation revealed that Complainant was employed by Respondent as a culinary arts instructor since October 1995 before he was removed from his position by his doctor in 9/03. Complainant remained out of work on leave for the 2003-04 and 2004-05 school years. When Complainant notified Respondent of his intent to return to work, Respondent advised him of a new assignment. The new assignment is in Complainant's tenure area, with the same salary, benefits, and opportunities. The teacher who took over Complainant's former assignment during his absence was performing well, and Respondent determined that she should continue in that assignment. Respondent indicated that Complainant's knowledge and skills were a good match for the new position, and best served the needs of the students and the overall mission of the program. Complainant continued to work as a teacher in his new assignment, and there is no indication that Respondent perceived Complainant as disabled or unable to perform the essential duties of his former or new assignment. Respondent articulated legitimate, non-discriminatory reasons to support their actions. These reasons were not shown to be a pre-text for illegal discrimination based on disability". (See Complaint, Ex. B, pp. 1-2).

12.) The Plaintiff did not file an appeal from the Determination by the New York State Division of Human Rights and the time within which to do so has since expired. (See Complaint, Ex. B., p. 2).

> 13.) The Plaintiff has been reinstated to a full-time teaching position within the tenure area of culinary arts/secondary. (See Complaint, Ex. B, p. 1).
>
> 14.) The only disability which the Complainant alleges to have sustained in this matter is the disability of "work-related anxiety and stress". (See Complaint, ¶ 14).
>
> 15.) The Complaint does not contain any specific allegation of any other impairment of a major life activity. (See Complaint).
>
> 16.) The Defendants Marie Warchol Wiles, Superintendent of Schools of the ONC BOCES, Nancy Noonan, Assistant Superintendent, and Diane Matteson, Human Resources Coordinator, are all individuals . . . .
>
> 17.) Upon the Plaintiff's return to employment, his position which he previously held, was filled by a regular full-time teacher who was performing well in the position. (See Complaint, Ex. B, p. 1).
>
> 18.) Other than the position that was created when the Plaintiff returned from his medical leave, there was no other vacant position to which the Plaintiff could have returned. (See Complaint, Ex. B., pp 1-2).

Def. Statement of Material Facts Pursuant to Rule 7.1.

## IV.   DISCUSSION

### a. NYHRL claims

New York Executive Law § 297(9) provides, in pertinent part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction . . . **unless** such person had filed a complaint hereunder or with any local commission on human rights . . . **provided** that, where the division has dismissed such complaint on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled, such person shall maintain all rights to bring suit as if no complaint had been filed with the division.

N.Y. Exec. Law § 297(9)(emphasis added).

"[O]nce a complainant elects the administrative forum by filing a complaint with the [New York State Division of Human Rights ("NYSDHR")], a subsequent judicial action on

7

the same complaint is generally barred unless one of the three exceptions in the statute is applicable." Johnson v. County of Nassau, 411 F. Supp.2d 171, 184 (E.D.N.Y. 2006). In Plaintiff's case, the administrative claim filed with the NYSDHR was not dismissed on the grounds of administrative convenience, on the grounds of untimeliness, or on the grounds that the election of remedies is annulled. Thus, pursuant to New York Executive Law § 297(9), Plaintiff's claims of discrimination brought under the New York Human Rights Law are barred. See Johnson, 411 F. Supp.2d at 184. "The bar to suit is jurisdictional." Id. (citing Moodie v. Federal Reserve Bank of N.Y., 58 F.3d 879, 883-884 (2d Cir. 1995)). Accordingly, Plaintiff's claims of discrimination brought pursuant to New York law are dismissed for lack of subject matter jurisdiction.

### b.   ADA - Individual Liability

In Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995), the United States Court of Appeals for the Second Circuit ruled that individuals who are not employers may not be held liable under Title VII. Because the ADA, like Title VII, pertains to discrimination by employers, district courts within this circuit have relied on Tomka and determined that individuals cannot be held liable under the ADA. Lennon v. NYC, 329 F. Supp. 2d 630, 640 (S.D.N.Y. 2005)(collecting cases). The Court agrees with those cases. Accordingly, all ADA claims brought against the individual defendants are dismissed.

### c.   ADA claim - Employer Liability

#### 1.  *McDonnell Douglas* Burden-Shifting Analysis

"The ADA prohibits discrimination by covered entities . . . against qualified individuals with a disability. Specifically, it provides that no covered employer 'shall

discriminate against a qualified individual with a disability because of the disability of such individual in regard to'" terms and conditions of employment. Sutton v. United Air Lines, Inc. 527 U.S. 471, 477 (1999)(quoting 42 U.S.C. § 12112(a)). When a court is presented with the task of analyzing a claim of employment discrimination brought pursuant to the ADA, the claim is subject to the burden shifting analysis established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–804 (1973). Heyman v. Queens Vill. Comm. for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999); Miller v. Taco Bell Corp., 204 F. Supp.2d 456, 458 (E.D.N.Y. 2002).

Under the McDonnell Douglas analysis, a plaintiff must first establish a *prima facie* case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the plaintiff makes out a *prima facie* case, the burden of production shifts to the employer to rebut this presumption by articulating a legitimate, nondiscriminatory reason for its actions. Fisher v. Vassar College, 114 F.3d 1332, 1335-36 (2d Cir. 1997)(en banc)("Fisher III"), cert. denied, 522 U.S. 1075 (1998).

If the employer proffers a legitimate, nondiscriminatory reason for the challenged employment action, "the presumption raised by the *prima facie* case is rebutted, and drops from the case." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993). The burden shifts back to the plaintiff who "then has the opportunity to demonstrate 'that the proffered reason was not the true reason for the employment decision,' and that [unlawful discrimination] was." Fisher III, 114 F.3d at 1336 (quoting St. Mary's Honor Ctr., 509 U.S. at 507-08). The ultimate burden of persuasion remains always with the plaintiff. St. Mary's Honor Ctr., 509 U.S. at 507, 511. In determining whether the plaintiff can satisfy

9

this ultimate burden, a court must examine the entire record and apply "a case-by-case approach." Schnabel v. Abramson, 232 F.3d 83, 90 (2d Cir. 2000).

### 2. Plaintiff's *Prima Facie* Case

To make out a *prima facie* case under the ADA, a plaintiff must establish that: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered adverse employment action because of his disability. Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001)(citing Heyman v. Queens Vill. Comm. for Mental Health, 198 F.3d 68, 72 (2d Cir. 1999)). Defendants focus their challenge to Plaintiff's *prima facie* case on the 2nd prong. Thus, the Court will assume, without deciding, that the 1st, 3rd and 4th prongs of the *prima facie* case are satisfied.

### i. Disabled within the meaning of the ADA

In order to make a showing of disability under the ADA, a plaintiff must put forward evidence of: (1) a physical or mental impairment which substantially limits one or more major life activities; (2) a record of having such an impairment; or (3) that he is regarded as having such an impairment. 42 U.S.C. § 12102(2)(A)-(C); Sutton v. United Air Lines, Inc., 527 U.S. 471, 478 (1999).

### A. Actually Disabled

"When determining whether a plaintiff suffers from an ADA disability, courts focus first on whether plaintiff suffers from an impairment. Second, the court determines whether the life activity identified by the plaintiff constitutes a 'major life activity' under the

ADA. Finally, the court considers whether plaintiff is 'substantially limited' in the identified major life activity." Miller v. Taco Bell Corp., 204 F. Supp.2d 456, 459 (E.D.N.Y. 2002)(citing Colwell v. Suffolk County Police Department, 158 F.3d 635, 641 (2d Cir. 1998)). The "substantial limitation" inquiry is fact specific. Colwell, 158 F.3d at 642. "Those who are substantially limited in major life activities are either unable to perform such activities or 'significantly restricted as to the condition, manner or duration' under which the activity may be performed, when compared with the condition, manner or duration under which the average person in the general population can perform that same major life activity." Miller, 204 F. Supp.2d at 459 (quoting 29 C.F.R. § 1630.2(j)(1)). The standard, overall, is a demanding one. See Toyota Motor Manuf. v. Williams, 122 S. Ct. 681, 691 (2002).

When determining whether there is a substantial limitation, the court considers: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment and (3) the permanent or long term impact resulting from the impairment. Id. (citing § 1630.2(j)(2)). "[A]n individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment's impact must also be permanent or long term." Toyota, 122 S.Ct. at 691. The case-specific inquiry central to the substantial limitation test also requires the Court to consider the impact of corrective measures on the plaintiff's condition. Schaefer v. State Ins., Fund, 207 F.3d 139, 142 (2d Cir. 2000).

Plaintiff has not asserted that, upon his return to work, he had a physical or mental impairment which substantially limited one or more major life activities. In fact, he alleges to the contrary. See Compl. ¶ 27 ("Upon my return to work in September 2005, I had no

11

medical condition that would prevent me from performing the essential functions of my job or returning to my former classroom teaching assignment nor did I require any special accommodation."). Therefore, Plaintiff fails to establish that was actually disabled within the meaning of the ADA at the time of the employment decision in issue.

### B. A record of being disabled

Plaintiff contends, however, that the employer discriminated against him with regard to his job assignment upon returning to work because he had a "record of prior disability." Compl. ¶ 27. In this regard, Plaintiff asserts that he previously suffered from "work-related anxiety and stress" "brought on" by the actions of his "immediate supervisor, William Diamond, Building Principal of the Northern Catskills Occupational Center." Id. ¶15. He asserts further that, upon examination by the employer's physician when he requested his leave of absence, the employer learned of the effects of the work-related anxiety and stress, and learned that he had "a family history of mental impairment including bi-polar disorder, severe depression and schizophrenia." Id. ¶ 16. He does not assert, however, that he suffered from bi-polar disorder, severe depression and schizophrenia, or that the records available to the employer revealed that he suffered from such mental conditions.

In order to qualify under the "record of having an impairment" prong of the ADA's disability definition, the record to which the employer has knowledge must reflect that the individual suffered from an impairment that substantially limited one or more of Plaintiff's major life activities. E.E.O.C. v. J.B. Hunt Transp., Inc., 128 F. Supp.2d 117, 134-35 (N.D.N.Y. 2001)(Mordue, J.). Plaintiff has not identified the major life activity that his purported impairment prevented him from performing. The Court assumes it is the ability to work under the supervision of William Diamond. See Compl. ¶ 21 ("In May of 2005, the

12

defendant removed Principal Diamond from his administrative position. . . . I was relieved that he would no longer be employed by the defendant and felt confident about returning to my teaching position in the fall of 2005."). However, an allegation that an individual suffers from an impairment that prevents him from working under the direction of a particular supervisor does not state a disability under the ADA. See Potter v. Xerox Corp., 88 F. Supp.2d 109, 112 (W.D.N.Y. 2000)(collecting cases), aff'd 1 Fed. Appx. 34, 37, 2001 WL 15617, at *1 (2d Cir. Jan. 5, 2001)(Summary Order).[2] Thus, even assuming that the employer was aware of a record indicating that Plaintiff had a disability that prevented him from working under the supervision of Diamond, there is no indication that the record reflected that Plaintiff suffered from an impairment that substantially limited a major life activity. See E.E.O.C. v. J.B. Hunt Transp., Inc., 128 F. Supp.2d at 134-35 ("Even assuming ... that [the employer] had requisite 'knowledge' of any claimant's underlying medical condition based on receipt of information from a claimant via oral interview or receipt of actual medical records, there is no evidence that the information or records in question evinced an impairment which imposed a substantial limitation on any of the claimant's major life activities."). Further, there is no evidence that Plaintiff suffered

---

[2] The Second Circuit stated in Potter:

> Since Potter has failed to suggest what major life activity has been substantially impaired by his depression, anxiety and panic attacks, we follow the district court in assuming that the major life activity alleged to be impaired is working. See Potter, 88 F. Supp.2d at 112. Because Potter's disability only prevents him from working in one position - the position he held under his last supervisor - Potter's ability to work is not substantially impaired. See Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 721 (2d Cir.1994) (noting that "a person found unsuitable for a particular position has not thereby demonstrated an impairment substantially limiting such person's major life activity of working"). Accordingly, Potter is not a disabled individual within the terms of the ADA.

Potter, Fed. Appx. 34, 37, 2001 WL 15617, at *1.

from bi-polar disorder, severe depression, or schizophrenia, or that such conditions affected Plaintiff's ability to perform any major life activities. Accordingly, Plaintiff's claim fails on the "record of being disabled" prong of the ADA disability definition.

### C. Regarded as disabled

Plaintiff also asserts that employer regarded him as being disabled with the meaning of the ADA. See Compl. ¶ 10. "To recover under the 'regarded as' prong of the ADA, a plaintiff must establish that [his] employers perceived [him] as 'disabled,' as that term is defined in the statute." Greicus v. Liz Claiborne, Inc., 2002 WL 244598, at * 4 (S.D.N.Y. Feb. 20, 2002)(citing Francis v. City of Meriden, 129 F.3d 281, 286 (2d Cir. 1997); Reeves v. Johnson Controls World Servs. Inc., 140 F.3d 144, 153 (2d Cir. 1998)). As the Second Circuit has noted:

> [a] plaintiff cannot state a claim under the "regarded as" prong of the ADA . . . . simply by alleging that the employer believes some physical condition, such as height, weight, or hair color, renders the plaintiff disabled. Rather, the plaintiff must allege that the employer believed, however erroneously, that the plaintiff suffered from an "impairment" that, if it truly existed, would be covered under the statute[ ] and that the employer discriminated against the plaintiff on that basis.

Francis v. City of Meriden, 129 F.3d 281, 285 (2d Cir. 1997).

As indicated above, Plaintiff's claim appears to be built around the contention that the employer regarded him as suffering from work related stress and anxiety that prevented him from working under the supervision of William Diamond. However, as discussed above, such a condition is not a qualifying disability under the ADA. To the extent that Plaintiff asserts that the employer regarding him as suffering from a more substantial mental illness, see Compl. ¶ 28 ("In September 2005 during arbitration, the

14

defendant's attorney stated to my attorney that the District Superintendent and Board of Education believed me to be mentally ill and further stated the defendant would never return me to my former classroom position because of this."), Plaintiff has not presented non-hearsay evidence of such a belief by the employer or explained how the purported mental illness affected one or more of Plaintiff's major life activities. Indeed, as the undisputed facts reveal, upon Plaintiff's notification that he could return to work in the Fall of 2005, the employer restored him to a full-time culinary arts instructor position. While the position was not the same position that Plaintiff held before he went on his leave of absence, there is no evidence from which a reasonable fact finder could conclude that the employer regarded Plaintiff as suffering from a physical or mental impairment which substantially limited one or more of his major life activities when it appointed him to the alternative position.

### ii. Conclusion - *prima facie* case

The Plaintiff has failed to proffer sufficient evidence to establish his *prima facie* case of ADA discrimination. Thus, the ADA claim is subject to dismissal on this basis.

### 3. Ultimate Burden

Assuming, *arguendo,* that Plaintiff has established a *prima facie* case of ADA discrimination, the claim nevertheless fails because Plaintiff has proffered insufficient evidence from which a fact finder could conclude that the employer intended to discriminate against him on the basis of a perceived disability. As indicated, the undisputed facts reveal that upon Plaintiff's completion of his two-year leave of absence, the employer reinstated him to a full time culinary arts teaching position. The employer

15

contends that it did not reinstate him to the same position he held before his leave of absence because the employer determined that the teacher who took over Plaintiff's position during his absence was performing her duties well and that her continuation in the position was most consistent with the needs of the students and the overall mission of the program. This constitutes a legitimate, non-discriminatory reason for the employment decision in issue and, therefore, shifts the burden back to Plaintiff to demonstrate that the proffered reason was not the true reason for the employment decision and that unlawful discrimination played a part in the decision.

Plaintiff has offered no evidence from which a reasonable fact finder could conclude that the employer's proffered reason for the employment decision was not the true reason and that unlawful discrimination was. Plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination." Bickerstaff v. Vassar College, 196 F.3d 435, 456 (2d Cir. 1999)(citation omitted); see id. at 448;[3] Richardson v. New York State Dep't, of Correctional Service, 180 F.3d 426, 447 (2d Cir. 1999)(affirming summary judgment for employer where employee offered only her own general claim of discrimination to show that the employer's legitimate reason for terminating her was pretextual). Because Plaintiff fails to establish facts from which a reasonable fact finder

---

[3] As indicated in Bickerstaff, on a motion for summary judgment the Court:

> must also carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture. This undertaking is not one of guesswork or theorization. After all, an inference is not a suspicion or a guess. It is a reasoned, logical decision to conclude that a disputed fact exists on the basis of another fact that is known to exist. Thus, the question is whether the evidence can reasonably and logically give rise to an inference of discrimination under all of the circumstances.

Bickerstaff, 196 F.3d at 448 (internal quotation marks and citations omitted).

16

could conclude that Plaintiff could satisfy his ultimate burden of proving disability discrimination, his ADA claim is dismissed.

### d.  Sections 1981, 1983 and 1985(3) claims

#### 1.  Section 1981 claim

Section 1981 prohibits racial discrimination. 42 U.S.C. § 1981; Saint Francis College v. Al-Khazraji, 481 U.S. 604, 609 (1987).  To assert a cognizable claim under Section 1981, a plaintiff "must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent."  Yusuf v. Vassar Coll., 35 F.3d 709, 713 (2d Cir.1994). Nowhere in the Complaint does Plaintiff allege that he was discriminated on the basis of his race.  Thus, to the extent a claim is asserted pursuant to Section 1981, the claim is dismissed.

#### 2.  Section 1983 claim

Employment discrimination claims brought pursuant to Section 1983 are subjected to the McDonnell Douglas analysis discussed above.  Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004).  Inasmuch as Plaintiff asserts only an employment discrimination claim based on his disability, his claim asserted pursuant to Section 1983 is dismissed for the reasons discussed with regard to the ADA claim.

#### 3.  Section 1985(3) claim

> The four elements of a § 1985(3) claim are:  (1) a conspiracy;   (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.  Furthermore, the conspiracy must also be

motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action."

Mian v. Donaldson, Lufkin & Jenrette Securities Corp., 7 F.3d 1085, 1087-88 (2d Cir. 1993)(quoting United Bd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983)). Plaintiff asserts throughout the Complaint that he was discriminated against on the basis of his disability. He fails to assert that any defendant acted in concert with any other defendant, or that the defendants' actions were based upon some racial or otherwise class-based, invidious discriminatory animus. Therefore, the Section 1985(3) claim is dismissed.

**IV. CONCLUSION**

For the reasons set forth above, Defendants' motion for summary judgment [dkt. # 12] is **GRANTED**, and the action is **DISMISSED**.

**IT IS SO ORDERED**.

DATED:   September 6, 2007

_____
Thomas J. McAvoy
Senior, U.S. District Judge